# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MASSACHUSETTS - WORCESTER

===============================

| | |
|---|---|
| IN THE MATTER OF: | . Case #01-47641 |
| | . |
| ACT MANUFACTURING, INC. | . Worcester, Massachusetts |
| | . **May 12, 2004** |
| Debtor | . 9:33 a.m. O'clock |

===============================

| | |
|---|---|
| CRAIG  JALBERT, LIQUIDATING | . Adv. #03-4741 |
| CEO, As Representative of the Estate | . |
| of the Consolidated Debtors | . |
| Plaintiff, | . |
| v. | . |
| ALCATEL USA MARKETING, INC | . |
| | . |
| Defendants. | . |

===============================

## TRANSCRIPT OF HEARING IN THE ADVERSARY:
### (#9) MOTION OF DEFENDANT FOR LEAVE TO FILE AMENDED ANSWER;
### (#20) OPPOSITION OF PLAINTIFF
### BEFORE THE HONORABLE JOEL B. ROSENTHAL, J.U.S.B.C.

**APPEARANCES:**   (See Next Page)

Electronic Sound Recording Operator:        Leah DiDonato

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Certified Transcription Service

## GCI TRANSCRIPTION SERVICES
### 210 Bayberry Avenue
### Egg Harbor Township, NJ  08234-5901
### 1-609-927-0299        FAX 1-609-927-6420        1-800-471-0299
### e-mail - irwingloria@comcast.net

Page 2 Cover
01-47641
AP#03-4741
5-12-04

**APPEARANCES**

For Craig Jalbert, LCEO:               DOUGLAS R. GOODING, ESQ.
                                       JOSEPH M. DOWNES, ESQ.
                                       Choate, Hall & Stewart
                                       Exchange Place
                                       53 State Street
                                       Boston, MA  02109


For the Defendant:                     STEVEN C. REINGOLD, ESQ.
                                       Jager Smith, P.C.
                                       One Financial Center
                                       Boston, MA  02111

                                       JOSEPH A  FRIEDMAN, ESQ. ( Pro Hac Vice)
                                       Kane, Russell, Coleman & Logan, P.C.
                                       26-2 Elm Street, Suite 3700
                                       Dallas, TX   75201


Electronic Sound Recording Operator:       Leah DiDonato

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Certified Transcription Service

## GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299       FAX 1-609-927-6420       1-800-471-0299**
**e-mail - irwingloria@comcast.net**

1  (At Tape #1, Index #30.  Time 9:33 a.m.)

2          MS. MAGEROWSKI:  All right.  Please be seated.  ACT

3  Manufacturing, Incorporated.  Case #01-47641.   Hearing in

4  Adversary Proceeding 03-4741.  Please identify yourselves for

5  the record.

6          MR. DOWNES:  Your Honor, Joe Downes on behalf of

7  Craig Jalbert, the LCEO of the ACT Manufacturing bankruptcy

8  estate.

9          MR. GOODING:   Good morning, Your Honor.  Douglas

10  Gooding for Mr. Jalbert.

11          MR. REINGOLD:   Good morning, Your Honor.  Steven

12  Reingold, Jager Smith, for the defendant.

13          THE COURT:   All right, first let me take care of a

14  little housekeeping.  I received a motion *pro hac* from Mr.

15  Friedman.  All right.  That's allowed.

16          All right, gentlemen, I'll hear you briefly.

17          MR. REINGOLD:   Thank you, Your Honor.  Just not to

18  belabor the issue since I'm sure you --

19          THE COURT:   Assume I've read the pleadings.

20          MR. REINGOLD:   Thank you.  Your Honor, this is one

21  of what we believe to be the larger adversary proceedings of

22  the more than 200 that were filed.  The claim is over three

23  million dollars, so it is, of course, rather important to my

24  client.  My client seeks to --

25          THE COURT:   If it's so important, why didn't they

1 figure out their answer during the ninety days that they were

2 given?

3        MR. REINGOLD:  Well, Your Honor, there's a couple of

4 responses to that.  First and foremost, the time was spent

5 reviewing the debtors' -- excuse me, the client's records to

6 determine exactly what the relationship was between one or more

7 of the debtor entities and this particular subsidiary.  There

8 are many payments at issue.  It's a rather large and

9 complicated corporate structure.  It was a very difficult

10 undertaking.  It took a lot of time.

11        Moreover, the issues raised in these three

12 affirmative defenses have to do with a settlement agreement

13 that the debtors entered into with the parent entity and not

14 this particular subsidiary, and that  --

15        THE COURT:  But was there anything that happened

16 after -- all those facts were known to your client or should

17 have been known -- no facts or events came to light after your

18 answer was filed that changed anything, were there?

19        MR. REINGOLD:  Well, Your Honor, the -- the

20 existence of the release and the settlement agreement that

21 approved it was something that was uncovered, if you will, by

22 Mr. Friedman, lead counsel, in reviewing the overall Chapter 11

23 cases.  As I said, the attention was focused specifically --

24        THE COURT:  Well, your client knew about it.  His

25 counsel may not have.

1        MR. REINGOLD:   Well, the client -- the subsidiary we

2   don't believe did, Your Honor.  It was the parent that entered

3   into the agreement.  And this is a large multi-national

4   corporation.  It's a very complicated structure.

5        THE COURT:   Well, I assume that's why they gave you

6   ninety days, and I assume you understood there was an

7   understanding when the agreement was that there would be no

8   further extensions.  Now isn't -- why isn't what you're asking

9   me to impose upon them contrary to the agreement that you made?

10  Why isn't that an extension?  You're supplementing your answer

11  that you made a deal with them, and now you don't like the deal

12  you made.  Why shouldn't I look at it in that fashion?

13       MR. REINGOLD:   Well, Your Honor, we don't see it as

14  not liking the deal we made.  The stipulation extending time

15  gave us until the end of March to file and answer, but --

16       THE COURT:   Which you did.

17       MR. REINGOLD:   -- which we did -- but in no way did

18  that implicate either explicitly or implicitly the parties'

19  right under Rule 15 to file an amended pleading.

20       THE COURT:   What does "no further extensions" mean,

21  then?

22       MR. REINGOLD:   Well, it means that we had to file an

23  answer by the date we had agreed to.  It did not mention much

24  less implicate our rights under Rule 15.  What's more, Your

25  Honor, there is case law to this that nothing in Rule 12(b) or

1 Rule 8 limits a party's rights with a properly offered

2 amendment under Rule 15A.

3           THE COURT:   But can't the party contractually agree

4 to limit that?

5           MR. REINGOLD:   If the stipulation had said so, Yes,

6 Your Honor, but we didn't mention Rule 15.  It wasn't

7 addressed.  It wasn't the intent of the parties to limit any

8 rights to amend or supplement pleadings.  It was simply when

9 does Alcatel USA Marketing have to put in a responsive

10 pleading?  What is that last date?  A responsive pleading was

11 filed by -- before that last date, Your Honor.  I think it's

12 not appropriate for plaintiff to argue that we are somehow

13 breaching a contract we entered into with the debtors just

14 simply allowing what's really a professional courtesy to get

15 our -- if you will, our ducks in a row on a three million

16 dollar preference claim.

17           Your Honor, this case is in its infancy, and what

18 should have been a routine courtesy and a routine matter has

19 turned into a very costly fight for the estate and for my

20 client.  We've got two lawyers for the estates here.  We've got

21 my time, lead counsel's time in an issue that was raised less

22 than thirty days after the answer was originally filed.

23           THE COURT:   But 120 days -- a little less than 120

24 days after -- or 90 days after your answer should have been

25 filed, under the Rules.

1          MR. REINGOLD:   Under the Rules, but we did have the

2    extension, Your Honor.

3          THE COURT:   But you -- you don't -- you want to read

4    out of the extension the part that you don't like.

5          MR. REINGOLD:   It's not that, Your Honor.   That

6    suggests some sort of malevolent intent on my client's part.

7          THE COURT:   No.   I think your client just didn't do

8    their job during the ninety days and didn't do the best job

9    they could, and they discovered some other stuff they could

10   throw in there, and I think it's a little disingenuous to say

11   that, "Gee, it's a big company.   We didn't know what was going

12   on."

13         MR. REINGOLD:   Well, Your Honor --

14         THE COURT:   I mean, I haven't gone back and looked

15   at the appearances.   Are you representing to me that neither

16   you nor Mr. Friedman were involved when the releases were done

17   before?

18         MR. REINGOLD:   The release with the parent company,

19   lead counsel on that Fish & Richardson.   My firm was asked by

20   Fish & Richardson to participate in some of the discussions

21   that led up to the settlement agreement.   We were not a party

22   to that.   We didn't draft it.   That was a separate law firm.

23   Neither Mr. Friedman's firm nor my firm were involved in the

24   motion that led to the approval of the settlement agreement.

25         Your Honor, it's frustrating for my client, because

1  what happened was the client -- the subsidiary was focusing on

2  ordinary course, new value, trying to track three million

3  dollars of payments.  The other legal issues raised by these

4  three affirmative defenses -- well, you know, yes, in a perfect

5  world, they would have come up earlier, but the attention was

6  really focused on trying to look at the Bankruptcy Code cause

7  of action and the Bankruptcy Code defenses.

8         Once it came to light the parent had an agreement

9  that benefited the subsidiary, we promptly moved to bring that

10  matter to the Court's attention, first by asking for an assent

11  of the plaintiff to file an amended answer, and then when that

12  was denied, even though we had explained the basis for the

13  amendment, we then immediately moved for relief from this

14  Court.

15         Your Honor, the standards under Rule 15 are well

16  known, and I won't take the time to recite them, but I would

17  like to respond to some of the point that plaintiff makes in

18  his opposition regarding those particular issues.

19         Most specifically with respect to undue delay,

20  discovery has not even commenced, Your Honor.  There is no

21  surprise to the plaintiff.  There is no unfair prejudice here.

22  What we're talking about are three legal, affirmative defenses

23  -- not factual, but legal.  There is no additional discovery

24  that would have to be had, particularly since we've already

25  apprised the plaintiff in advance of the basis for the

1  affirmative defenses.  At worst, you're talking about drafting

2  a couple more interrogatories and document requests which

3  haven't been served anyway, Your Honor.

4          You know, this is distinguishable from the cases

5  where parties seek to amend an answer in the midst of trial,

6  after discovery has closed, after dispositive motions have been

7  filed.  We've just begun, Your Honor, and we don't see how

8  there is unfair prejudice to the other side.

9          We're not talking about delaying matters, Your Honor.

10 In fact, we've committed to the other side our intention to

11 bring these legal issues to the Court's attention by way of a

12 summary judgment motion as soon as practicable, and by the end

13 of the month, if possible.  So we're not looking to delay

14 matters.   This isn't a litigation tactic.  It's simply trying

15 to preserve the client's rights that it has to bring legal

16 issues before the Court.

17          With -- those goes to the heart of the defenses, Your

18 Honor.  The futility arguments that plaintiff raises, we

19 obviously don't agree with.  If plaintiff disagrees with the

20 merits of the defenses, that's one thing; but that's not the

21 standard at this early stage of the litigation.

22          We're talking here about a very significant cause of

23 action.  We're talking about a very substantial --

24          THE COURT:   That's -- you know, that cuts both ways,

25 though.  If it's such a significant cause of action, how can

1  you excuse the fact that you didn't plead it properly within

2  the ninety days?  Ninety days is a long time.

3          MR. REINGOLD:  Again, Your Honor --

4          THE COURT:  Especially in my court, where this case

5  -- you know, a pre-trial order issued, and I'd be ready to try

6  this case in a couple of months.

7          MR. REINGOLD:  Again, Your Honor, the reason for the

8  delay was that the client was focusing on the Bankruptcy Code

9  defenses --

10          THE COURT:  I understand that, but that -- you're

11  just assuming because they were focusing, that's an excuse.

12          MR. REINGOLD:  Not offering it as an excuse, Your

13  Honor.  We're moving as fast as we can.  The parties have

14  agreed to extend discovery out because of the complexity of the

15  issues.  There are a number of issues that are unique to this

16  adversary that we don't believe have been raised in any of the

17  other 200-plus that were raised, even setting aside the dollar

18  amounts at issue, Your Honor.

19          We think that there are a lot of legal issues that

20  have to be presented, and we're looking to do that as

21  expeditiously as possible.  Bringing to the Court's attention

22  these three additional affirmative defenses is one way of doing

23  that.

24          Your Honor, with respect to whether the client knew

25  of the release and the related ramifications, even if that's so

1  and should have been brought earlier, it doesn't rise to the

2  level of whether the affirmative defense is futile, which is

3  what the plaintiff is arguing.  Futility is a very high

4  standard to meet, and I don't think under the controlling cases

5  that this falls under that.

6          If Your Honor would like, I'd like to address the

7  specifics with respect to that release language, because that

8  really goes to the heart of the amendment.  If not, we can save

9  it for summary judgment.  I'll leave that to the Court.

10          THE COURT:   Just proceed.  Argue what you wish.

11          MR. REINGOLD:   Thank you, Your Honor.

12          All three of these affirmative defenses relate to the

13  settlement agreement that this Court approved prior to

14  confirmation of the debtors' plan of reorganization, and the

15  settlement agreement is between the debtors and the various

16  estates, and Alcatel, the parent of this entity, and it is very

17  broad and very specific in what it released and what it didn't.

18  There are very specifically defined terms such as "affiliate,"

19  "cause of action," -- or "action in claim," excuse me.  And

20  carved out from the release is a specific exception for sub-

21  Chapter 5 causes of action against Alcatel, which is defined as

22  the parent; but the release language, which is not part of the

23  carve-out, is for Alcatel, its affiliates -- which is a defined

24  term -- and its subsidiaries.

25          This was a heavily negotiated settlement with the

1  Committee, with the debtors, and with the Alcatel parent.  It's

2  a legal issue that we'd like to raise as soon as possible.  The

3  confirmation order which plaintiff relies on has specific

4  language excepting out situations such as this.  If I may, Your

5  Honor, the confirmation order provided on page 12, paragraph 4,

6  that:

7              "Except as provided in the plan and two settlements,

8              or as provided in a prior or future order of this

9              Court, no assets of the estates shall be deemed

10             abandoned, and no cause of action shall be deemed

11             released or compromised by or as a result of the

12             plan,"

13  et cetera.

14              Here, the release and the settlement agreement

15  approving it were approved by this Court prior to confirmation,

16  and the confirmation order provides that in a conflict between

17  it and the plan, its terms control.  So we think we have a

18  valid legal issue here that is not a futile attempt to raise at

19  this time, Your Honor.  And therefore, under the liberal

20  standards of Rule 15, Alcatel should be allowed to at least

21  raise it.  We may lose on the issue on the merits at a later

22  date, but that's not the test at this early stage, Your Honor.

23  The interest of justice, when viewed through the lens of the

24  debtors as opposed through Alcatel, clearly, we believe that

25  the scale weighs in favor of Alcatel.

1          By denying Alcatel leave at this early stage

2   contravenes what we believe to be the spirit and the letter of

3   Rule 15 and would unduly prejudice my client; whereas, allowing

4   us to proceed to file an amended answer does not delay the

5   case, it does not create an undue burden for the estate, and we

6   think certainly is not futile.

7          Your Honor, in summary, this case in infancy, and we

8   don't think that the motion should be denied.  We would

9   appreciate that Alcatel be permitted to amend its answer.

10          THE COURT:   Thank you.

11          MR. REINGOLD:   Thank you.

12          THE COURT:   Mr. Downes.

13          MR. DOWNES:   Good morning, Your Honor.  Your Honor,

14   to begin with, the LCEO, you know, fully acknowledges that

15   under usual circumstances that leave to amend is freely given

16   and that he understands the liberality with which Courts

17   typically grant amendments.  But this case is different, and

18   it's different in two material respects:

19          As it's been noted, Your Honor, we fully assert that

20   Alcatel has waived its right to assert these affirmative

21   defenses pursuant to the stipulation.  It's a contractual

22   agreement between the parties whereby they agree to no further

23   extensions.  We disagree with counsel's interpretation of that.

24   As we've seen from his pleadings and now from his argument here

25   today, he parses the language of these agreements very

1  narrowly; and clearly, the 90 days was granted to allow Alcatel

2  to get their ducks in a row, to put everything they have into

3  this answer, and to move forward.   They didn't do that, and

4  therefore, they shouldn't be given a second bite at the apple

5  to try to assert these affirmative defenses here today.

6        Secondly, Your Honor, we also believe that the motion

7  for leave to amend should be denied because the affirmative

8  defenses that Alcatel seeks to add, they're simply futile.  At

9  best they're futile and without merit.  At worst they're

10  brought in bad faith and interposed for a delay.

11        Specifically, Your Honor, I'll address the first of

12  the two affirma -- or the first -- the two affirmative defenses

13  that they're raising on the basis that the LCEO is somehow now

14  not empowered to bring these avoidance actions.  Those are the

15  defenses of *res judicata* and also estoppel.

16        Clearly, Your Honor, we've set forth the relevant

17  portions of the plan, of the disclosure statement, and the

18  confirmation order in our pleadings.  We don't think we need to

19  recite them here today, but essentially the ***Bankvest*** decision

20  essentially mirrors the plan that we have here before us today,

21  Your Honor, and essentially the Court has disposed of this

22  exact issue already, saying that nearly identical language that

23  existed in the ***Bankvest*** plan -- it's found in the plan here

24  today, allows the, and empowers the LCEO to bring such action,

25  and really don't think that this issue deserves too much

1  further discussion.

2          With respect to the release, Your Honor, they're

3  trying to bring that as the third affirmative defense.  And

4  essentially what Alcatel is arguing is because of a scrivener's

5  error that  Alcatel is defined in such a way that the parent

6  company, which did not receive any transfers within the 90

7  days, we reserve the right to bring actions against them as

8  opposed to the subsidiary here, which received over three

9  million dollars within the ninety days -- clearly that was not

10 the intent of the parties here, Your Honor.

11         Clearly, the circumstances surrounding this case will

12 show, and do show that they were not a party to the contract.

13 There was no consideration for maintaining claims against

14 Alcatel but releasing the entity which received over three

15 million dollars in claims and essentially the Committee and

16 their participation in this was also mischaracterized by

17 counsel as well.  Counsel said that the Committee was heavily

18 involved in negotiations.  That is not so, Your Honor.  This is

19 -- the settlement agreement that he is referring to was between

20 essentially the debtor's counsel at the time, Mintz Levin, at

21 the behest of the banks, Your Honor, and also -- and Alcatel.

22 The Committee filed a late objection, specifically intending to

23 reserve any and all preference actions.  The LCEO had not been

24 appointed to that time, and clearly his investigation of the

25 preference actions was not completed at such time.  But without

1  doubt, the intent here was to reserve such actions.

2          Now -- and again, opposing counsel really relies on

3  the strict interpretation of this contract, Your Honor.  I

4  think you could see, just from a, you know, a cursory review

5  that it is replete with errors.  Specifically, if you look to

6  the specific portion of the release here, mutual release 4(b),

7  when it enumerates the --

8          THE COURT:  Do I have that document?

9          MR. DOWNES:  If you do not, I'd be happy to

10  approach.

11          THE COURT:  No, I mean, do I have that document in

12  the -- amongst the papers that I have on this --

13          MR. DOWNES:  I do not believe so.

14          THE COURT:  Okay.  Go ahead.

15          MR. DOWNES:  Well, essentially it enumerates the

16  Code sections under Chapter 5, which the plaintiff has

17  reserved, and it says 502(d), 544, 547, 548, 549, and then

18  instructively here at Section 500, Your Honor -- obviously

19  another scrivener's error.  I mean, by counsel's strict

20  interpretation, we'd be essentially arguing -- he'd be

21  essentially stating that to the extent Congress should

22  subsequently enact Section 500 to the Bankruptcy Code, that

23  that was actually what was bargained for.

24          THE COURT:  So he wants that one strictly construed,

25  but he wants your agreement on the answer liberally construed.

1  It depends on -- his construction methods depend on whether his

2  ox is being gored or not, is what you're telling me.

3         MR. DOWNES:   Exactly, Your Honor.  And therefore

4  also, and just to counter some of the arguments that he had

5  made with respect to the fact that there hasn't been any undue

6  delay, I think certainly, Your Honor, this isn't a case where

7  the amendment's been brought on the ninth day of trial; but

8  obviously the delay portion here has to be read in light of the

9  contractual agreement between the parties.  Ninety days, like

10 you said, is a long time, Your Honor.  They were given plenty

11 of time to get their answer together and to file it and to

12 assert all of their affirmative defenses, and failing to do so,

13 Your Honor, we feel that they have waived it.  And to the

14 extent they were -- to the extent otherwise, Your Honor, these

15 claims clearly were futile, without merit, and therefore should

16 not be allowed.

17         THE COURT:   Thank you.

18         MR. DOWNES:   Thanks.

19         THE COURT:   Mr. Reingold, I'll give you the last

20 word.

21         MR. REINGOLD:   Thank you, Your Honor.  Just a couple

22 of --

23         THE COURT:   The last brief word.

24         MR. REINGOLD:   Just a couple of brief points.

25 First, with respect to Bankvest, Your Honor, we're not here

1  arguing that the liquidating CEO lacks standing to bring

2  avoidance actions.  It's a little more subtle than that.  What

3  we're saying is, by way of the release and the confirmation

4  order language that I quoted, that the liquidation supervisor

5  -- I'm sorry, Liquidating CEO, has  -- is subject to release

6  and waiver *res judicata*/estoppel-type defenses.  It's not that

7  he has no standing to bring these.  We're not arguing that.

8  We're arguing that these claims should -- these particular

9  claims should not be brought.

10         Your Honor, with respect secondly and lastly with

11  respect to the release, the lack of consideration, the

12  scrivener's errors -- if allowed to bring the -- to file the

13  amended answer, Alcatel, as I indicated, will bring a summary

14  judgment motion quickly.  Your Honor will see at that time that

15  these were not mere scrivener's errors, and, in fact, in the

16  motion to amend the relevant language is quoted in my motion.

17  These are specific definitions, Your Honor, relating to the

18  term "affiliate," relating to the term "Alcatel," what was

19  released, what was not release, "action" and "claim."  These

20  terms were specifically defined.  It's not a question of a

21  transcription error or a zero where a five should have been.

22  This was a contemplated term that was used.

23         Lastly, Your Honor, with respect to the consideration

24  issue, there is no case law that I was able to discovery under

25  Massachusetts law, and plaintiff has not cited any, where a

1  subsidiary named specifically in a release like this needs to

2  have its own independent and separate consideration for the

3  bargain for release.

4          THE COURT:   Thank you.

5          MR. REINGOLD:   Thank you, Your Honor.

6          THE COURT:   I am not convinced by Mr. Reingold's

7  argument.  I think you -- Alcatel knew or should have known

8  about the defenses.  If this case had followed its normal

9  course, but for the courtesies that have been extended by the

10  plaintiff, this case would be just about done with discovery,

11  and we would be talking about a trial.

12          This is a preference action, pure and simple.  It's

13  not as sophisticated as one would think.  I believe that the

14  parties agreed to give an extended time to answer to avoid

15  exactly this kind of situation, and I see no reason and I've

16  heard no reason why I shouldn't enforce that agreement.

17          So for those reasons, the motion is denied.  I find

18  that you contractually agreed to one shot at the apple for

19  filing an answer, and that time has come and gone.  Thank you.

20          MR. REINGOLD:   Thank you, Your Honor.

21          MR. DOWNES:   Thank you, Your Honor.

22  (End at Tape #1, Index #1315.  9:54 a.m.)

23              *  *  *  *  *  *  *  *  *  *  *

24

25

1          I certify that the foregoing is a true and accurate

2    transcript from the electronically sound recorded record of the

3    proceedings.


_____                    **Date**
**GLORIA C. IRWIN**
**Certified Transcriber NJ AOC200**
     **Federal  CET #122**
**GCI TRANSCRIPTION SERVICES**
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**609-927-0299   1-800-471-0299**
     **FAX  609-927-6420**
**e-mail   irwingloria@comcast.net**